Good morning, Catherine Neves for Petitioner Appellant Rodolfo Carr. Unless the Court prefers otherwise, I'll begin with the gatekeeper's denial of Mr. Carr's first counseled motion for new trial, raising ineffective assistance of both trial and appellate counsel on the Speedy Trial issue, and then move on to the question of when the Speedy Trial right was triggered in this case. Just looking at the gatekeeper's decision in part and asserting that essentially the gatekeeper determined that the issue was new but not substantial, I would focus the Court on the sentence before the ultimate, the application is denied, where the Court said the motion judge denied the motion finding a failure to raise a substantial issue, which is a very abbreviated merits determination, but it's not an invocation of merit. It's an invocation of waiver. And then the Court went on to say, upon consideration, the application is denied. There was nothing in the gatekeeper's decision saying it was neither new nor substantial. And I think the fact that both the trial court somewhat recognized that there was some sort of a merits issue, because this was the first time ineffective assistance of appellate counsel was being raised. In the event that the court believes, as the district court did, that invocation of procedural default was ambiguous by the gatekeeper and that you could go ahead and just reach the merits to deny, I would ask the court instead to consider the fact that Mr. Carr's procedural default is excused by the fact that he never had review of effectiveness of either trial or appellate counsel. And Martinez v. Ryan, cited in our brief, holds just that. In Mr. Carr's case, his first motion for a new trial was filed pro se in 2014. The court denied his request for appointment of counsel. In that motion, he raised ineffective assistance claims, but he did not have the benefit of counsel to help him. So that motion was denied, and the gatekeeper denied an appeal of that, finding it wasn't new or substantial. What Martinez v. Ryan holds is that when a state court denies counsel in a collateral proceeding, and in Massachusetts, Sinzer is the case out of the SJC. Massachusetts strongly disfavors raising ineffective assistance of counsel on direct appeal. The favored method is a motion for a new trial. When that is the case, and when a defendant comes into court post appeal and is asking for counsel to pursue a new trial motion, and the court denies that, that denial constitutes cause for a procedural default raised by the state court. I don't mean to tell you what to focus on, but the district court got to the merits, correct? They did, to deny it. So you need that to be wrong for you to win. Well, I know. Yes. Well, there's so many things that need to go right for me to win. Yeah, sure. I mean, I think that obviously the merits are difficult. I don't, if the speedy trial issue is something, the triggering event, which the district court did not reach. If that's not a concern for the court, I'll pass on that as well, which it was briefed. But in this case- How are we free to treat the triggering event as starting when you want us to give it our precedent? No, I know, so I'm happy to talk about that. I think that your precedent is in conformance with your precedent. There was a public accusation here along with a complaint. There was the wanted poster, which is located in the appendix at page 86, which has Mr. Carr's picture, all his biographical information, the list of charges, and his aliases. And that was posted at the time the complaint was issued by the district court. Also, I would just point out, so I don't think there's a need to reconsider Rashad or Butler in those circumstances, but I would point out to the court, because the court looked at rule three in the Butler decision and pointed out the fact that a defendant could waive indictment. But the fact of the matter is under rule three, all criminal process in Massachusetts, it's a peculiarity, I guess, I don't know of all the 50 states, but all criminal process starts in the district court, whether they are misdemeanors or felonies. If they're misdemeanors, they stay in the district court. If they're felonies and they're not a capital case, a defendant may waive indictment. But even if a defendant, and the court relied on that in Butler saying, this complaint isn't really a formal accusation. But even if a defendant waives the right to indictment, the prosecution can still indict. In a capital case, in a murder case, there is not that option. A defendant must be indicted. But the question of whether and when to indict is wholly in the government's control at the end of the day, and they must indict. And in this case, the complaint issued, as it always does, rule three says, and then once the complaint issues, the district court issues warrants to apprehend the suspect. The SJC noted in its findings that the prosecutor was going to indict in 1974, but then chose to wait until after the proceedings were completed in East Chicago, Indiana. They never did it. They never indicted him. They didn't indict him until 1997, but that was the prosecutor's choice. And in the course of those 23 years, all the evidence was lost. Mr. Carr lived openly under his own name for 19 years in East Chicago, Indiana. The exact place where the Boston police knew he was in 1975. Council, to focus really on the merits of the ineffective claim and the standards that we have to apply here, the doubly differential standard. Why is it indisputably and debatably wrong for the state courts to have concluded here that at the end of the day, there was just no indication that your client actually wanted a speedy trial? And I know there are various factors that have to be considered, but overall, that was the conclusion that the state court system reached. And they said that given all of his conduct put together, he flees the jurisdiction, he doesn't raise the speedy trial claim when he's indicted right away, etc. Why was it just indisputably wrong to say this is not a defendant that actually wanted a speedy trial and is only raising it now to try to undermine his conviction, which is not the point of the protection? Well, I would just say that the Supreme Judicial Court resolving the speedy trial issue did not have the benefit of any of the evidence or facts about the 19 years that he lived in East Chicago, Indiana. So- I understand that, but I guess, again, if we're looking at the overall determination, which is that he did not want a speedy trial, that's their conclusion. Well, I'm not sure that evidence, I'm asking you, how would that evidence have changed that analysis? I think, well, the point is that there's no evidence that he knew of any charges against him until, at the very earliest, Boston police came to interview him in 1994. There's no evidence that he never signed a detainer in 1974. There were conversations between the police, but there's no indication, and I think the SJC even recognized that there's really no indication that he even knew there were charges until 1994, maybe. But 1996 is when he signs a detainer. He's indicted in 1997. So the fact that he's not, how do you ask for a trial of something you don't even know there are charges against you? But even taking all of those facts as you've presented them, and I may be misremembering the dates, so tell me if I am. But he still doesn't request, he doesn't make a speedy trial motion until seven years later, is that correct? Well, I would say this, when he is brought back, he's indicted. They go see him in 94, they send a detainer in 96, he signs it in 96. They don't indict him until 97, and then they bring him back. He goes through a number of different counsel after he comes back. I think it's three or four. Then there is a motion to dismiss on speedy trial grounds filed in 2002, which is then heard in 2003. So I mean, there's a request, right? There's bringing to the court's attention, this isn't right, there's too much time has gone by. We're trying to, I think the question of whether someone's requesting a trial goes to the question of are they sitting out on bail somewhere, and so they just don't want a trial. You've got 30 years, and 19 of them, 20 of them, he doesn't even, 26 of them, until 1994, he doesn't even know there are charges. Boston police come to see him in 1994. So the factors- For that period, just so I'm clear, when the government cites our precedent for the idea that in the absence of information or indictment, you're saying that's not a problem here because- Because a complaint issued in August 1974. And the complaint is equivalent of an information? Yeah, it's the equivalent. The Supreme Judicial Court, in its decision, and Butler said, under our constitution, under Article 11, which is coterminous with the Sixth Amendment, this is a formal accusation, because every all criminal process- And you're saying our precedent hasn't taken a position one way or the other about whether a complaint is or isn't? I think you can say, well, what you've said in Rashad is that you need a public accusation. No, we said in the absence of an information or indictment. Right, information or indictment or public accusation, I think is what you said. Well, Doggett says, triggered by arrest, indictment, or other official accusation, this court said only a public accusation animates the right, so to a speedy trial cause. So yes, I would say that a complaint is another official accusation. And have we taken a position, that's what I'm asking you, is have we taken a position one way or the other on that? In Butler, your position was that it was not. And the position was that- That a complaint was not. That a complaint was not, because it would- So that's why I'm trying to get you- I thought you explicitly said in your brief, we have to overturn our precedents in order to get to the triggering analysis that you want us to do. It was either or, your honor, either the fact of the complaint plus the wanted poster would comply with official accusation, excuse me, which is also described as a public accusation. I think the idea is that a complaint sometimes can be something that is not an official or public accusation, it's still investigative. And that's different than, under Massachusetts precedent, there's, tell me what's the, if you don't indict, what would be the equivalent? Well, a complaint starts every criminal case. Whether the case is a felony and then must move to indictment or not, it starts in the district court as a complaint. Is there such a thing as information? No, it's a complaint. And so- I thought that what we said in Butler was that the way that it works in Massachusetts is that the Commonwealth still can't proceed on the complaint unless the defendant waives an indictment. Yeah, and that's, it's not wholly accurate. So you're saying our conclusion about the Massachusetts rules in Butler is wrong? I would have to say it is, because rule three says, the first thing it says is all criminal process starts in the district court with a complaint. If it's a misdemeanor, it's an application for criminal complaint, which a magistrate has to issue. If it's a felony, like a murder, the police just get a complaint. They bring it in and file it ex parte and they get a warrant. Either way, warrant for arrest. A defendant, and what the court was focused on in Butler was the fact that rule three says a defendant can waive indictment. But what the court didn't realize is that rule three also says, even though a defendant can choose to waive an indictment, the prosecution can still proceed by indictment. But with a murder, like this case, neither can do either. A murder case has to be indicted. It has to be tried in the superior court. So misdemeanors are tried, for the most part, in the district court. Felonies are tried in the superior court. There's a statute, 218.30, or it's 218.32. They both govern this whole process of what the district court does. But the district court says, they may bind over someone who, hold someone to charge for a misdemeanor. They shall bind over someone charged with a felony. So the district court doesn't have the final jurisdiction on a capital crime, but it always starts in the district court with a complaint. So for that reason, if the court sticks with the holding that only an indictment starts the speedy trial clock, well then, all that lost evidence for 23 years, where the government plainly just was too busy with other things, I think, quite frankly, to bother, they knew where he was, they just never brought him back. If there's no speedy trial right, all the evidence that was lost in this case is remarkable. The rifle, the bullets, witnesses were dead, police officers retired, couldn't be found. I mean- It just depends on whether a complaint is significant enough under our precedent to- Well, yes. Be the equivalent of the information or indictment, right? Right, and that's what the Supreme Judicial Court said, that it is an official, it's an official accusation for our purposes. A complaint, it doesn't matter if eventually it goes to indictment. And the SJC said that, for what purposes was the SJC saying that? The same, it was the Butler case, yeah, it was the same case. So they rested their holding on their own constitution, our own constitution, Article 11, but the provisions are analogous. So the SJC said it's a formal accusation, it's the only way that you start criminal process in Massachusetts. Whether it goes on to an indictment doesn't change the fact that this is a formal accusation. So the only other way that I found around either saying that you have to look at Butler and Rashad was to say, in this case, the complaint plus a public accusation made it quite plain that Mr. Carr was wanted for assault with intent to murder. And there was a warrant for his arrest, so that the clock started in August of 1974. There's no evidence that he knew that there were charges against him. He has always maintained that he is innocent of this crime. The identification witnesses- Doesn't he give the wrong name when they then- Yes, yes, and he's aware that his fear was that he'd be deported. And he did give the wrong name, but the Boston police knew those aliases in 1974. And he kept, well, I would just direct the court to an NCIC printout in 1986, which the Commonwealth turned over, showing his aliases and arrests, and these were in the government's file. They knew where he was, and they knew his aliases. He wasn't evading, he was afraid of being deported. So he would, when he got picked up by the police, he would give different names. But he went to Purdue University, and there he- Yeah, we know- Excuse me, if we don't accept your triggering event argument, what's left of your speedy trial claim and ineffective assistance of counsel claim? Not much, right? No, not much, and I think the court has to look at what that means if you don't recognize the criminal process in Massachusetts as being a trigger. In Doggett, the time between indictment and trial and arrest was eight and a half years, and that was crazy long. I mean, here we've got a complaint that our state's highest court said is an official accusation, and we've got 30 years before he's tried. I understand. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the appellee please introduce herself on the record to begin? Good morning, Your Honors. May it please the court. Assistant Attorney General Tara Johnston on behalf of the respondent. This court should affirm the district court's denial of Mr. Carr's habeas petition. Because one, the SJC reasonably found that Mr. Carr was not denied his constitutional right to a speedy trial. And two, because the ineffective assistance of counsel claims are procedurally barred. And even if this court deems the gatekeeper's order as in any way ambiguous, as the district court found that merits of the claims can easily be disposed of on the merits. Turning first to the SJC's determination. As a preliminary matter, and as of course my sister recognizes, the SJC's determination with respect to that 19 year delay between 1975 and 1994 cannot be an unreasonable application of clearly established federal law. When in fact, that is prior to the speedy trial clock even being triggered. From the respondent's position, this court's precedent in Rashad versus Walsh and Butler versus Mitchell is consistent with Supreme Court precedent in United States versus Marion and United States versus McDonald, that there must be formal documentation. Here, and that is, as this court expressed, stated, made very clear in Butler versus Mitchell. A Massachusetts criminal complaint does not suffice. There must be either, in Massachusetts, an arrest or an indictment. As I don't disagree with my sister that a person who's charged with murder, it's not about waiver, they must be indicted. That even goes to show more why a criminal complaint alone is not enough to commence the criminal process against Mr. Carr. Additionally, of course, there is restraints, there's been no new Supreme Court precedent or basis for overturning this court's precedent in Rashad versus Walsh and Butler versus Mitchell. But even if this court were to say- I just ask, if we were in Massachusetts court and we had a speedy trial case, would the clock start with the complaint? Yes, it would, your honor. Under federal- They are more generous. As a federal- No, as a matter of state law, they start the speedy trial clock at the time of the complaint. Yeah, but as a matter of their interpretation of the federal constitutional speedy trial right. That would just never arise? I don't think that would arise because no matter what, they give a more generous time span. They start it from the time of the complaint. Regardless, even if this court were to agree, which I would say would be inconsistent with Rashad versus Walsh and Butler versus Mitchell. But even if this court were to agree with my sister that somehow the criminal complaint here in conjunction with the Boston Circular, which really amounts to nothing more than a wanted poster, which again is not a formal document. But even if this court were to agree that that started the speedy trial clock, this court would, the SJC still reasonably applied clearly federal established law in Barker versus Wingo and Darragat versus the United States in finding that there was no speedy trial violation here. The court looked at the four factors set forth in Barker versus Wingo, the length of the delay, the reason for the delay, the cars- And the SJC proceeded on the understanding that that earlier time period did count? Yes, your honor. Yes, they considered all of it. And considering all of those four factors, the third factor assertion of Mr. Carr's right to a speedy trial and prejudice to Mr. Carr. And looking at all of that, the court reasonably determined that all of those factors cumulatively did not lead to a result that Mr. Carr was denied his constitutional right to a speedy trial. And the reason for that is clear. It's because the record clearly demonstrated that Mr. Carr did not want a speedy trial. Counsel, that, you know, the Supreme Court's assessment of that earlier period from 1975 to 1994 did not include opposing counsel would argue the critical information about the way in which Mr. Carr was living openly, going to college, employment under his real name, Social Security registration, I guess. So that, I guess they would say that was a very incomplete analysis by the SJC of the Barker-Wingo test, because that critical information through the omissions of trial counsel and appellate counsel was never brought to their attention. That is the case, is it not? I would not wholly agree with that, your honor. At the motion to dismiss hearing, there was, and before the motion, Judge, there was evidence that during that time, Mr. Carr, at times he was apprehended in Indiana, he did give his own name. So the court was aware of that. Also, although it is not absolutely clear from the SJC's decision, it is actually a fact that at the motion to dismiss hearing and in a supplemental memorandum supplied by trial counsel after the motion to dismiss hearing, trial counsel did argue that Massachusetts authorities were not acting diligently to look for Mr. Carr during that period of time, because if they had, they could have found him. Then, at the SJ, at trial, and which the SJC would have been able to review under reviewing the entire record, at trial, trial counsel actually did present evidence in support of Mr. Carr's defense that Mr. Carr was living under his own name, that he was taking classes under his own name. So the SJC did have that information before them in reviewing the whole case under 33-E review. And in doing so, they found that there was no violation of a speedy trial, right? So the SJC did have some of that information before them. And there was some new information, of course. There is not, the SJC did not have trial counsel's and appellate counsel's affidavits in support of Mr. Carr's motion for new trial. But the SJC was aware that Mr. Carr was going by his own name at periods of that time. That was part of the defense at trial. And that he did give his own name at times he was apprehended. There was actual evidence in the record, the state court record of that, that was admitted? Yes, Your Honor. Yes, I don't know that there was evidence of that he was working under his own name. I know that there was evidence he was living under his own name, that he was taking classes under his own name. And that was part of the defense at trial. So the SJC did have the opportunity to consider that. But the fact of the matter is, that doesn't change the fact that from 1975 to 1994, Mr. Carr was also giving aliases. And to Mr. Carr's own admission, it was to subvert authorities. Whether or not it was for the purpose of subverting authorities with respect to other charges, in order to not have to worry about deportation, or whether it was regarding the Massachusetts charges, the fact remains that he was trying to confuse authorities about his whereabouts. And this is also someone, which of course the SJC considered, who fled the scene after a murder in 1974, never to be seen in Massachusetts again until he was brought back after indictment. This is someone who, when confronted in 1994 about these charges by Massachusetts authorities, denied his identity, denied ever having been to Boston, Massachusetts, claimed he was from New York. So this is not someone who the record- I don't know if I fully understand the point. Imagine there is a, prior to the public accusation being present, a person who hasn't been charged has incentives to have their, an alias, for reasons having nothing to do with evading trial. So they acquire an alias, they continue to use the alias. Now there's a public accusation that comes out that triggers the speedy trial clock. There's no indication that person knows of the accusation, but that's not a requirement for the clock to run. And the police authorities, I'm not saying this is what happened, but just choose to do nothing about it for 20 years. They can then at the end of that rely on the fact that for wholly different reasons this person has an alias to say he can't assert a speedy trial right. When he learns now that they're going to actually bring the charges against him. I'm seeing that Mr. Carr's own actions diminish the chances of authorities finding him and that is something- But that would be true in my example. Yes. And that just doesn't strike me as a particularly attractive account of what we are trying to accomplish with the speedy trial, right? Well, I think- Defeating his ability to be tried. Well, your honor, I think that that is an inference that the court can draw from the fact that he fled the site of a murder in 1974, never to return to Massachusetts, and also- Can that possibly be right for the speedy trial? Anybody who doesn't turn themselves in right away can't assert a speedy trial claim? No, your honor. I think that you have to look at it- The issue is whether he committed it. Right, but this can't be looked at in a vacuum. It also has to be looked at when he was told about the charges regarding the Matto shooting in 1994. He lied outright. I mean, I take it at that point, but I think the idea then is, you know, does that fact at that moment undermine the claim that in the 20 years before, if it were the case, that the police were being completely negligent in not doing anything, if there had been a public accusation? I mean, there's a lot of ifs I understand, but is it the case that that statement at that time is enough to then preclude the ability to assert a speedy trial, right? Well, I think it also undermines the conclusion or a determination that the Massachusetts authorities were actually being negligent in not trying to find Mr. Carr. We don't know exactly what they were doing during this time or the exact measures they were taking. But I know my sister points out a couple of those aliases were known to authorities in 1974. He additionally used an additional alias, Fernando Santiago, which was not known to authorities. He also used various spellings of his own name. And whatever measures they were taking, and we don't know, and the SJC recognized this. That is not clear from the record that they were taking any. But it certainly would have diminished the chances of them finding him. There's no question. And that was the exact purpose of Mr. Carr's use of aliases was to subvert authorities. He knew this would be confusing for them. To his own admission, he did not want to be found. Whether it be concerns about deportation or otherwise, the fact is he did not want authorities to know where he was. Now, also- Also, for the purpose of the speedy trial analysis here, it does matter whether his use of aliases was an attempt to avoid being arrested and prosecuted for a murder that he arguably, you could say he knew that he committed. And then in 1994, he denies that he's the person. I mean, although he says the concealment of my true identity was all about deportation, a court looking at that could draw a different inference. That's what he says, but we think it's a fair inference that he was trying to avoid prosecution for the murder. And that would be a reasonable view for a court to take, would it not? Absolutely, Your Honor. Absolutely. And I think it is the view that the SJC took. And then you have the other factors which also militate in Barker's, Barker factors, which also militate in the State's favor. And we cannot, so we cannot look at this all, we have to look at this all in the, their determination that he did not want a speedy trial was also on the basis of the third factor, which was his assertion of a speedy trial right. As this court has recognized and we've discussed, he denied his identity in 1994 when he's told about these possible charges. He completely denies his identity, showing that he does not want to be tried on this case. And then he doesn't assert any right until he doesn't actually file a motion for a speedy trial, as this court has recognized, until 2004, approximately six months before trial, seven months after indictment. Thank you. Thank you, Your Honor. I don't know if there's any further questions. Otherwise, the respondent would rest his case. Thank you.  Thank you, counsel. That concludes argument in this case.